Kevin M. Cuddy (Bar No. 0810062)
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK 99501-1959
Telephone: (907) 277-1900
Facsimile: (907) 277-1920
kevin.cuddy@stoel.com

Christopher Ward (IL Bar No. 6298759)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: (312) 832-4500
Facsimile: (832) 832-4700
cward@foley.com
*Admission pro hac vice pending*

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| AIRCRAFT SERVICE INTERNATIONAL, INC. dba AIRCRAFT SERVICE INTERNATIONAL GROUP and ASIG, a Delaware corporation,<br><br>                                     Plaintiff,<br><br>       v.<br><br>INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, DISTRICT LODGE 160 and ANCHORAGE LOCAL LODGE NO. 1690,<br><br>                                     Defendants. | Case No.<br><br>COMPLAINT FOR DECLARATORY JUDGMENT AND FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF |

*STOEL RIVES LLP*
*510 L Street, Suite 500, Anchorage, AK 99501*
*Main (907) 277-1900 Fax (907) 277-1920*

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
*- 1*
4822-5706-9644.1
9373789.1 0100301 00001

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

### Introduction

1.      Aircraft Service International, Inc. ("ASII"), doing business under the trade names Aircraft Service International Group and/or ASIG (hereinafter referred to as "ASIG"), brings this suit seeking a declaratory judgment and injunctive relief arising out of an unlawful work stoppage threatened by a group of ASIG employees at the Ted Stevens Anchorage International Airport ("ANC" or "Airport"), with the encouragement and support of the International Association of Machinists & Aerospace Workers, District Lodge 160 ("District Lodge 160") and its Anchorage Local Lodge 1690 ("Local 1690") and individuals and entities affiliated with and acting in concert with them (District Lodge 160 and Local 1690 and individuals and entities affiliated with and acting in concert with them shall be collectively referred to as the "Union").  The contemplated strike would violate the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.*, and threatens to cause substantial disruption in the airline industry both locally at ANC and throughout the country and the world, which would cause significant harm to all those constituencies in Alaska that depend upon a functioning major airport in Anchorage for employment, interstate commerce, tourism, and economic and personnel access to the rest of the country and the world.  Such unlawful action thus must be enjoined.

2.      Based on what has occurred over the two months prior to ASIG initiating this legal action, and as described more fully herein, the Union's intent to incite a strike is imminent and designed to unlawfully try and pressure ASIG into agreeing to continue recognizing the Union and to secure a new Collective Bargaining Agreement with ASIG.

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
*- 2*
4822-5706-9644.1
93737897.1 0100301-00001

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

3.     ASIG is an employer performing work historically performed by commercial airline carriers.  ASIG operates at ANC under the significant control of those air carriers.  Any rights and obligations regarding labor relations and collective bargaining between ASIG and the Union are therefore governed by the RLA and not by the National Labor Relations Act. The RLA makes it abundantly clear that the Union has no right to engage in a labor strike or any other concerted job action under these circumstances, such that its threatened strike activity is unlawful.

4.     ASIG performs vital and necessary functions for the overwhelming majority of the commercial airlines operating at ANC, including fueling over 90 percent of all commercial passenger and cargo flights at the Airport.  ASIG operates at ANC pursuant to a master contract between ASIG and a consortium of airlines that owns the fueling facilities and instruments at ANC.  Customers at ANC for whom ASIG fuels all of their flights include American Airlines, Delta, United, Alaska Airlines, Jet Blue, Icelandair and China Airlines.  Thus, any labor strike by ASIG's employees at ANC would have the certain effect of causing major delays and cancellations to flights in and out of ANC, and could even cause the shutdown of virtually all flight operations in and out of ANC.

5.     ANC is also a major hub for air cargo operations. FedEx Express and UPS operate major hubs at ANC for cargo heading to Asia.  In 2015, Airports Council International listed ANC as the fourth largest airport in the world and number two in the United States for handling air cargo traffic.  Because ASIG fuels nearly all the cargo flights departing ANC, the Union's threatened action could effectively shut down critical shipments of cargo in and out of Alaska and visit a significant harm on interstate and international commerce.

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
*- 3*
4822-5706-9644.1
93737897 01 0000 10000 01

6. Air service is of such critical importance to Alaska, which lacks interstate highways for over-the-road transportation available in the lower 48 states, that the U.S. Government maintains an Essential Air Service subsidy program for air travel in Alaska to ensure the state as a whole and its remote communities have access to the national economy and to critical services and resources. A disruption of fueling operations at ANC would have deleterious and potentially disastrous effects on Alaska Natives living in remote villages seeking access to medical care at Alaska Native Medical Center in Anchorage, disrupting the all-important summer tourist season and hindering or even cutting off the state's access to the larger U.S. economy and supply of resources.

7. A labor strike at ANC would be directly at odds with specific provisions of the RLA, which Congress extended to the commercial airline industry specifically to prevent labor strife from interfering with and shutting down air transit in the United States. Because substantial and irreparable harm would result to ASIG, its customers, the flying public and those in the U.S. and around the world that depend upon the flow of passenger flights and cargo through ANC if such an action would be permitted to occur, this Court should grant the temporary restraining order, preliminary and permanent injunction relief requested by ASIG herein.

8. On multiple occasions prior to commencement of this action, Local 1690 has taken steps to conduct a secret-ballot strike authorization vote pursuant to the Constitution of International Association of Machinists authorizing labor strike at ANC upon expiration of the existing CBA between the Union and ASIG. Representatives of the Union have further communicated to ASIG that the Union has received authorization from employees to call them

*ASIG v. International Association of Machinists*, Case No. _____
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
- 4
4822-5706-9644.1
93757897.1 0100301 00001
Case 3:17-cv-00167-HRH   Document 1   Filed 08/09/17   Page 4 of 22

out on strike if a new Collective Bargaining Agreement is not reached between ASIG and the Union and that the Union will do so if ASIG does not accede to its demands.

9. However, because the Union does not have majority support of ASIG employees in the relevant craft or class (Fuelers) across the entire ASIG system, and the Union has never received any official certification as the bargaining representative of ANC employees. ASIG's recognition of the Union has always been voluntary and may be revoked unilaterally by ASIG.

10. Because the Union does not represent a majority of the entire craft or class of ASIG's nationwide operations as is required for certification under the RLA, ASIG has decided to withdraw its voluntary recognition of the Union. The Union's threat to incite an unlawful strike is simply a strategy to preserve a status it does not enjoy legally and cannot obtain through the proper legal method of resorting to the representation process under the RLA.

11. As established by a long list of court and administrative agency decisions, including courts in the Ninth Circuit, it is clear that the relationship between ASIG and the Union is governed by the RLA. Any strike under these circumstances would be illegal under the RLA.

12. The Union, through its representatives, refuses to acknowledge that labor relations between ASIG and the Union at ANC are governed by the RLA.

13. As recently as a few months ago, the National Labor Relations Board ("NLRB") has acknowledged that it does not have jurisdiction over ASIG because of its RLA coverage and therefore refused to exercise jurisdiction over another union's attempt to organize ASIG employees. Instead, the NLRB referred that matter to the National Mediation Board ("NMB"), the administrative agency charged with implementing the RLA. See NLRB Case No. 28-RC-195332/NMB File No. CJ-7175. Referral of a case filed with the NLRB to the NMB is the NLRB's longstanding practice whenever it encounters a circumstance of even "doubtful" or

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
- 5
4822-5706-9644.1
9373789741 010030190001

<div align="center" style="writing-mode: vertical-rl;">STOEL RIVES LLP<br>510 L Street, Suite 500, Anchorage, AK 99501<br>Main (907) 277-1900 Fax (907) 277-1920</div>

"arguable" RLA coverage. A different region of the NLRB has also recently affirmatively ruled ASIG is covered by the RLA and dismissed an unfair labor practice charge without referral to the NMB. The NLRB's Office of the General Counsel affirmed that dismissal, also agreeing that ASIG was covered by the RLA and the NLRB therefore did not have jurisdiction over ASIG as an employer or its current or former employees. See NLRB Case No. 13-CB-195191, involving IAM District Lodge 142

14.     The irreparable injury showing that is typically required to obtain injunctive relief does not apply under the RLA because of the important public policy of avoiding interruptions to air commerce reflected in the RLA. *Consolidated Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 303 (1989); *S. Ry. Co. v. Bhd. of Locomotive Firemen*, 337 F.2d 127, 134 (D.C. Cir. 1964). Instead, upon a finding by the Court that the RLA applies or even arguably applies to ASIG, the Court may enter injunctive relief without considering the irreparable harm to ASIG.

15.     Nonetheless, all of the traditional factors for granting injunctive relief are present here, including irreparable harm. Should the Union strike, irreparable injury will undoubtedly occur to ASIG, the flying public and those who depend upon the freight flowing through ANC.

16.     Furthermore, given the RLA prohibitions against striking, there is a high degree of likelihood ASIG would prevail on the merits were this case litigated to its conclusion.

<div align="center">**Jurisdiction and Venue**</div>

17.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case arises under the laws of the United States, specifically the RLA, 45 U.S.C. §§ 151, *et seq.* Jurisdiction also is appropriate under 28 U.S.C. § 1337, as the RLA is a law regulating commerce.

*ASIG v. International Association of Machinists*, Case No. _____
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
- 6
4822-5706-9644.1
9373789.1 0100301 00001

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

18.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to this suit occurred and will occur in Anchorage, Alaska.

## Parties

19.     ASIG, headquartered in Fort Worth, Texas, is a provider of aviation-related services to commercial airlines at various airports throughout the country, including ANC. As recognized repeatedly by the federal Courts, the NMB and the NLRB, ASIG is a "carrier" as that term is defined by the RLA, and is subject to that statute.

20.     International Association of Machinists & Aerospace Workers' District Lodge 160 ("District Lodge 160") is an unincorporated labor organization whose headquarters is located in Seattle, Washington.

21.     International Association of Machinists & Aerospace Workers' Local Lodge 1690 is an unincorporated labor organization that is under the umbrella of District Lodge 160 and maintains headquarters in Anchorage, Alaska. Local Lodge 1690 is also a party to the CBA and purports to represent ASIG's employees at ANC.

## Factual Background

## ASIG's Operations are Essential to the Operation of Ted Stevens Anchorage International Airport

22.     ASIG manages the overwhelming majority of all fueling operations at ANC and its operations at the Airport are completely fueling-focused.  ASIG employees commonly referred to as "Fuelers" provide at least 90% of all into-plane fueling services for commercial carrier passenger and cargo flights departing out of ANC.

23.     Pursuant to contract with Anchorage Fueling and Service Company, the shareholders of which are all carrier airlines (the "Consortium"), ASIG manages the Consortium-

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
- 7
4822-5706-9644.1
9373789v1 010030100001

**STOEL RIVES LLP**

510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

owned fuel tank "farm" at ANC and ensures the farm operates consistently with and maintains required fuel stores per the Consortium's requirements.

24.    Also pursuant to contract with the airlines, ASIG manages and maintains the 7-mile pipeline that supplies jet fuel from the Port of Anchorage to ANC itself, and also assists the Consortium airlines with offloading fuel they purchase and have delivered to the Port and processing that fuel into the pipeline system.  As with its into-plane fueling operations, ASIG must also perform all this work consistent with the standard operating procedures set by the airlines, such that the specific actions ASIG employees perform are dictated by the carrier's requirements.

25.    Given that ASIG manages virtually the entire fuel supply – from the delivery of the fuel at the Port to the point where it goes into the airplanes –  a labor disruption would significantly harm nearly all ANC passenger and cargo traffic, resulting in significant flight delays if not outright cancellations of flights attempting to depart from Anchorage.  As result Alaska Natives may be denied medical treatment in Anchorage and the all-important summer tourist season which is a vital part of the Alaskan economy will be disrupted.

26.    Additionally, ANC is a major air cargo hub, particularly for cargo heading to Asia, and was identified in 2015 by Airports Council International as the fourth largest cargo airport in the world and number two in the U.S. behind Memphis (where FedEx is based).  Any fueling disruption caused by labor strife would thus have a deleterious effect on air freight out of one of the most important cargo locations in the world.

## ASIG Performs Functions Traditionally Performed by Air Carriers and Is Controlled by Air Carriers

27.    The Consortium carriers that ASIG services at ANC control the what, when, where and how of every facet of ASIG's operations at ANC.  Unlike many other airports where

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
- 8

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

carrier contractors will have separate agreements with different airlines, ASIG has a single contract with the Consortium that governs its entire operation in ANC.

28.     The contract between ASIG and the Consortium is a "cost-plus" contract.  This means that ASIG simply takes its costs and passes them through to the Consortium, which is then obligated to reimburse ASIG for those costs.  Accordingly, the Consortium has an enormous incentive to control ASIG's operations to ensure that they are being run efficiently and in fact exercises that control.

29.     One aspect of the Consortium's financial control over ASIG requires it to submit to the Consortium annual staffing tables that set out ASIG's proposed staffing levels for the coming year, along with proposed wage rates for each proposed employee. Those tables are entirely subject to the approval of the Consortium, meaning that the Consortium has an effective veto over ASIG's staffing levels and pay rates.

30.      Moreover, if circumstances change over the course of the year (if, for example, a carrier increases the number of flights through Anchorage in the middle of the year), ASIG must obtain permission from the Consortium if it needs to hire new employees. Likewise, if ASIG and the Union are engaged in collective bargaining, and the Union seeks a higher than expected wage increase, ASIG is required to consult with the Consortium prior to accepting the Union's proposal.

31.     The Consortium requires ASIG to develop, at the Consortium's expense, an operations manual governing its operations. But despite the fact that ASIG must create this manual, the Consortium retains unilateral authority to approve or reject it.

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
- 9
4822-5706-9644.1
9373789731 010030190001

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

32. Carriers also provide fueling manuals to ASIG that govern the specific terms that each carrier requires when flying planes. ASIG is required to be familiar with each carrier's unique fueling manual and ensure that its employees comply with that carrier's procedures.

33. On every flight serviced by ASIG, carrier personnel direct ASIG employees' performance down to minute details, including where on the airfield the fueling must occur (in other words, where ASIG employees work), at what time the fueling occurs (in other words, when ASIG employees work), how much fuel to load, the method used to load the fuel, and in which portions of the plane to load the fuel (in other words, how ASIG employees work). In fact, ASIG will not put one drop of fuel on any carrier plane at ANC without first receiving instruction from the carrier on what it wants ASIG to do.

34. ASIG has absolutely no role in the content of any carrier's fueling manual, despite the fact that ASIG is the party conducting all the fueling for those carriers at ANC.

35. Each carrier has the effective authority to terminate any individual ASIG Fueler based on their own personal decisions. At ANC, Fuelers must be able to work on flights for all airlines. This is one of the methods by which ASIG keeps costs down as required by the Consortium. Accordingly, if a carrier excludes a Fueler from that carrier's operations, ASIG has no choice but to terminate the employee, based on the carrier's unilateral decision. This has happened on multiple occasions, even where ASIG was unable to corroborate the allegations of misconduct made by the carrier.

36. Almost every piece of equipment and piece of property used by ASIG at ANC is owned or leased by the Consortium. By way of example, the fueling trucks and carts that ASIG used to fuel planes are owned by the Consortium and have large Consortium logos. These logos are visible to passengers both from the terminal as well as from the planes themselves. Any such

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
*- 10*
4822-5706-9644.1
9373789V.1 0160501-00001

passenger looking out a window of a plane or terminal would reasonably believe that an ASIG employee fueling a plane is actually an employee of the Consortium.

37.     All the facilities used by ASIG in ANC, including offices, break rooms, work rooms, and the tank farm, are owned or leased by the Consortium.

## Labor Relations Between ASIG and the Union

38.     ASIG has for years voluntarily recognized the Union as the bargaining representative of a group of its workers at ANC and voluntarily negotiated a series of collective bargaining agreements with the Union.

39.     Under the RLA, a union may be officially certified by the NMB.  The NMB certifies union representatives for a group of employees only where that group comprises a craft or class of employees the employer's entire "system" of operations.

40.     ASIG has operations at more than 30 airports across the United States, and a bargaining unit of "Fuelers" would be certified by the NMB only if a majority of the combined Fuelers at all of these dozens of airports voted in favor of a particular union.

41.     The Union never sought nor has it ever obtained certification through the NMB as the representative of workers at ANC.  It also has never obtained certification as the bargaining representative of any ASIG employees at ANC under any other statutory framework, such as the NLRA.

42.     Nothing in the RLA prohibits employers like ASIG from voluntarily recognizing unions as the representative of employees on a less-than-system wide basis.  However, because such narrow voluntary recognition is inconsistent with the RLA's policy of system-wide representation, the NMB affords such voluntary relationships no legal standing in the event the parties have a dispute as is the case here.

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
*- 11*
4822-5706-9644.1
93737897.1 0160501-00001

Case 3:17-cv-00167-HRH   Document 1   Filed 08/09/17   Page 11 of 22

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

43. In 2015, ASIG and the Union entered into a Collective Bargaining Agreement with an effective date of July 1, 2013 and an expiration date of June 30, 2017 (the "CBA").

44. The CBA states that the Union purportedly represents a unit of ASIG's employees located at ANC consisting of "All full time and regular part time Mechanics, Fuelers, Pit Technicians and Plant Operators employed by the Company at its Anchorage International Airport Facility, but excluding office clerical employees, sales and professional employees, guards and supervisors."

45. None of the previous collective bargaining agreements entered into by ASIG and the Union covering ANC employees has ever explicitly recognized the Union under any statutory scheme, and the most recent CBA between the parties is completely silent on the issue.

46. The CBA requires either party to give written notice of intent to terminate the CBA to the other at least 60 days prior to the scheduled expiration of the CBA.

### Origin of the Instant Labor Dispute

47. Because the Union has never received any official certification as the bargaining representative of ANC employees and because ASIG has never had any indication that the Union represents a majority of ASIG employees across the entire craft or class of employees as required by the RLA, ASIG decided in April of 2017 not to conduct further collective bargaining negotiations with the Union.

48. Consistent with the CBA's provisions, on April 27, 2017, ASIG, acting through its legal counsel, gave formal written notice to the Union of its intention to terminate that agreement following its June 30, 2017 expiration and to withdraw recognition of the Union at that time.

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
*- 12*
4822-5706-9644.1
93737897.1 0160501-00001

Case 3:17-cv-00167-HRH   Document 1   Filed 08/09/17   Page 12 of 22

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

49. The following day, the Union notified ASIG's ANC General Manager of its own intent to terminate the CBA, but requested to enter into negotiations on a successor CBA. ASIG therefore again notified the Union that it intended to withdraw recognition from the Union and would not enter into negotiations over a successor CBA.

50. On June 14, Local 1690 conducted a secret-ballot strike authorization vote. Thereafter the Union notified ASIG that employees had authorized a strike and the Union would call for one if a new Collective Bargaining Agreement was not reached before July 1, 2017. Specifically, in a letter dated June 20, 2017, attorneys representing the Union wrote to counsel for ASIG, "As you probably know, the ASIG employees authorized a strike and, should the parties not reach an agreement, ASIG employees may strike once the contract expires."

51. The letter from the Union's attorneys goes on to state "Your letter also asserts that the relationship between your client ASIG and its IAM represented employees at ANC is governed by the Railway Labor Act. That assertion is incorrect. For decades the parties' relationship has been governed by the National Labor Relations Act."

52. In an attempt to discuss the disagreements between the parties both to avoid potential legal action by ASIG and an illegal strike by its employees, ASIG invited the Union to meet to discuss the situation at ANC and attempt to resolve their differences of opinion. Initially the Union rejected a meeting for such purpose, indicating it would only meet for the purpose of collective bargaining.

53. Nevertheless, ASIG again invited the Union to meet to attempt to avoid legal action and prevent an illegal strike. This time the Union agreed to meet, and representatives of ASIG and the Union accompanied by their respective counsel met in Seattle on July 10, 2017 to discuss the situation at ANC.

*ASIG v. International Association of Machinists*, Case No. _____
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
- 13
4822-5706-9644.1
93737897.1 0160501-00001

Case 3:17-cv-00167-HRH   Document 1   Filed 08/09/17   Page 13 of 22

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

## The Union Intends to Engage in an Illegal Strike

54.     Prior to the scheduled July 10 meeting, the Union posted notice on July 6, 2017 of another strike sanction vote scheduled for July 12, 2017.  The Union also began calling ASIG's airline customer contacts at ANC, claiming that ASIG was acting in contravention of the NLRA and by doing so, attempted to create disruption with ASIG's customer relationships.

55.     ASIG understood these actions by the Union to mean the Union had no intent to address ASIG's right to withdraw voluntary recognition and by its conduct, reaffirmed its intention to take illegal action.  ASIG nevertheless agreed to go forward with the July 10, 2017 meeting.

56.     During the July 10 meeting, ASIG proposed a further "status-quo" agreement to allow continued consideration of the situation.  The Union refused and at first demanded a three-year guarantee of continued voluntary recognition.  When ASIG rejected that demand, the Union demanded an immediate wage increase for employees.  During this same meeting, ASIG ultimately agreed to a 2% wage increase for the duration of a 45-day extension agreement to the CBA.  That extension will expire on August 24, 2017.

57.     During that same meeting, Local Lodge 1690's representative reiterated the Union's position that the NLRA and not the RLA applies to the relationship between the parties.  When asked by ASIG to provide factual or legal support for such an assertion, the Union's counsel could only state that the relationship has always been covered by the NLRA, but offered no other support for such an assertion.

58.     At no time has the Union or any of its attorneys presented any legal authority or basis for their conclusion that the NLRA and not the RLA governs the relationship between the

*ASIG v. International Association of Machinists, Case No.* _____
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
- 14
4822-5706-9644.1
9373789.1 0160501-00001

parties at ANC. Furthermore, the Union has never responded in substance to the authority and support that ASIG has provided for the conclusion that ASIG is covered by the RLA.

59.     Also at the July 10 meeting ASIG proposed that the parties agree that if ASIG would seek injunctive relief or if the Union would call a strike, they would give each other reasonable advanced notice of their intended action.   The Union explicitly rejected any suggestion that it would give ASIG any advance notice whatsoever before calling a strike.   The Union stated words to the effect of "after obtaining authorization, we will strike whenever we decide we want to."   ASIG has understood this to mean that if it does not accede to the Union's demand that it continue recognizing the Union and negotiate a successor CBA on terms the Union deems favorable, they will call employees out on strike at its first opportunity, which is 12:00 a.m. on August 25, 2017.

60.     As evidenced by a long list of court and administrative agency decisions, including courts in the Ninth Circuit, it is clear that the relationship between ASIG and the Union is governed by the RLA.  *See, e.g.*, *Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters AFL-CIO Local 117*, No. C12-1729JLR, 2012 WL 5194163, at *1 (W.D. Wash. Oct. 18, 2012) ("Airline carriers such as [ASIG] are subject to … the Railway Labor Act ('RLA') that prohibits a carrier's employees from striking at will"); *aff'd*, 742 F.3d 1110 (9th Cir. 2014), *rev'd on other grounds and vacated sub nom. Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters*, 779 F.3d 1069 (9th Cir. 2015) (*en banc*); *In the Matter of the Application of the Serv. Employees Int'l Union, United Serv. Workers W. Alleging A Representation Dispute Pursuant to Section 2, Ninth, of the Ry. Labor Act, As Amended Involving Employees of Aircraft Servs. Int'l Group*, 40 NMB 43, 43 (Nov. 20, 2012); *Aircraft Servs. Int'l, Inc. & Teamsters, Auto. Chauffeurs, Parts, Garage, Office Clerical, Airline, Healthcare, Petroleum Indus., Produce, Bakery & Indus. Workers Within W.*

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
- 15
4822-5706-9644.1
93737897.1 0160501-00001

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

*Pennsylvania & Joint Council No. 40, Local Union No. 926 a/w Int'l Bhd. of Teamsters*, 352 NLRB 137 (2008); *Aircraft Serv. Int'l Group, Inc.*, 33 NMB 258 (2006); *Aircraft Serv. Int'l Group, Inc.*, 33 NMB 200 (2006); *Aircraft Serv. Int'l Grp., Inc. & Chauffeurs, Teamsters, & Helpers Local Union 492, Int'l Bhd. of Teamsters, Petitioner*, 347 NLRB 1417 (2006); *Aircraft Serv. Int'l Grp., Inc. & Local 324, Int'l Union of Operating Engineers, AFL-CIO & A.S.I.G. Employees Ass'n*, 342 NLRB 977 (2004); *Signature Flight Support/Aircraft Serv. Int'l, Inc.*, 32 NMB 30 (2004); *In the Matter of the Application of the Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO Alleging A Representation Dispute Pursuant to Section 2, Ninth, of the Ry. Labor Act, As Amended Involving Employees of Aircraft Servs. Int'l Group*, 31 NMB 508, 508 (Sept. 3, 2004); *Aircraft Serv. Int'l Group, Inc.*, 31 NMB 361 (2004); *Re: Signature Flight Support of Nevada*, 30 NMB 392 (July 1, 2003).

61.     Section 2, First of the RLA imposes two obligations on a union: (1) it prohibits a union and its members from instigating, encouraging, or participating in a work action (or any other change in the status quo); and (2) it requires a union to make all reasonable efforts to prevent or stop a work action whether it has instigated the work action or not.

62.     Section 2, First, of the RLA, 45 U.S.C. § 152, First, also imposes an affirmative legal duty on employers, unions, and employees "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions ... in order to avoid any interruption to commerce."

63.     The provisions of Section 2, Ninth of the RLA are mandatory and the sole basis for seeking union representation under the RLA, precluding employees from striking to obtain organization and empowering courts to enjoin such work stoppages.

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
- 16
4822-5706-9644.1
93737897.1 0160501-00001

Case 3:17-cv-00167-HRH   Document 1   Filed 08/09/17   Page 16 of 22

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

**Declaratory Judgment That The RLA Governs The Rights And Responsibilities Of ASIG And All Defendants**

64.     ASIG realleges and incorporates its allegations in paragraphs 1 through 63 as if fully set forth herein.

65.     The parties have a substantial, continuing and actual controversy between them as to whether or not the RLA governs their collective bargaining relationship and the Union's ability to call a lawful strike under the facts and circumstances.

66.     ASIG has, with the support of the facts and the law, asserted that its relationship with the Union is governed by the RLA.  The Union, without offering any such support, claims the relationship is governed by the NLRA.  The instant dispute has an enormous impact on the rights, responsibilities and obligations of the parties and dictates whether the Union has any right to call employees out on strike and whether such action, which will indisputably create serious and irreparable harm to many constituencies served by ANC, is specifically precluded by law.

67.     Because ASIG's ANC operation performs functions traditionally performed by carriers (namely, fueling airplanes) and is controlled by or under common control of a consortium of carriers, ASIG is necessarily a "carrier" within the meaning of the RLA.

68.     As a carrier under the RLA, ASIG and its employees are expressly excluded from the coverage of the NLRA.  29 U.S.C. § 152(2), (3).

69.     As a result of the parties' differing positions, they have adverse legal interests with regard to this controversy.

70.     A judicial determination of the parties' rights and obligations as to whether the RLA or the NLRA applies to the relationship between ASIG and the Union at ANCs is necessary, appropriate, and desirable at this time.

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
*- 17*
4822-5706-9644.1
93737897.1 0160501-00001

Case 3:17-cv-00167-HRH   Document 1   Filed 08/09/17   Page 17 of 22

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

WHEREFORE, Aircraft Service International, Inc. prays that this Court grant the following relief:

A.    Issue a Declaratory Judgment that the RLA governs the relationship between ASIG and the Union at ANC;

B.    Award ASIG such other and further relief as this Court deems just and proper; and

C.    Grant ASIG such other and further relief as is just and proper, including costs and attorneys' fees.

## COUNT II

### Injunction for Violation of the Railway Labor Act

71.    ASIG realleges and incorporates its allegations in paragraphs 1 through 63 as if fully set forth herein.

72.    Section 2, First, of the RLA, 45 U.S.C. § 152, First, imposes an affirmative legal duty on employers, unions, and employees "to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions ... in order to avoid any interruption to commerce." This provision prohibits the Union from striking for the purpose of either obtaining or seeking to maintain recognition from ASIG.

73.    Section 2, Ninth of the RLA, which provides for secret ballot elections of all employees within a craft or class across a carrier's entire system, provides the sole basis for seeking union representation under the RLA.  This provision both precludes employees from striking to obtain organization and empowers courts to enjoin such work stoppages and overrides the anti-strike provisions of the Norris-LaGuardia Act.

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
*- 18*
4822-5706-9644.1
93737897.1 0160501-00001

**STOEL RIVES** LLP
510 L Street, Suite 500, Anchorage, AK 99501
*Main (907) 277-1900 Fax (907) 277-1920*

**STOEL RIVES LLP**
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

74.     Regardless of the Union's motivations for threatening a strike, the Union has no right to call a strike or engage in any other work stoppage action at ANC.

75.     Similarly, ASIG's employees at ANC have no right to strike or engage in any other job action at this time.

76.     Therefore, an injunction is an appropriate and necessary remedy to compel the performance of the Union's legal duty.

77.     Under the RLA, ASIG is not required to establish irreparable injury to obtain an injunction against an unlawful strike.   *See*, *e.g.*, *Consolidated Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 303 (1989) ("The district courts have subject-matter jurisdiction to enjoin a violation of the status quo pending completion of the required procedures, without the customary showing of irreparable injury."); *S. Ry. Co. v. Bhd. of Locomotive Firemen*, 337 F.2d 127, 134 (D.C. Cir. 1964) ("[T]he public interest in peaceful settlement of labor disputes through utilization of statutory procedures is also involved, and irreparable injury to the complaining party is not an element which bears significantly or relevantly on furthering the public interest.").

78.     Thus, upon a showing that a Union or its members have threatened a strike, a preliminary injunction should issue as a matter of course.

79.     Nevertheless, even if a showing of irreparable injury to ASIG were required, domestic and international commerce and indeed all the many communities and individuals inside and outside Alaska that depend upon a functioning major airport in Anchorages will all suffer irreparable injury as a result of the Union engaging in an illegal strike or other concerted job action at ANC.  By way of example, Alaska Natives may be denied access to medical care in Anchorage and the all-important summer tourist season will be disrupted causing great harm to the Alaskan economy. This major interruption to the health and well-being of Alaskans and the

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
*- 19*
4822-5706-9644.1
9373989.1 0160501-00001

Case 3:17-cv-00167-HRH   Document 1   Filed 08/09/17   Page 19 of 22

economy is exactly the type of social ill the RLA's extreme limitation on workers' right to strike was designed to avoid.

80.     ASIG has no adequate remedy other than to seek injunctive relief to prevent an illegal strike or job action at ANC.

WHEREFORE, Aircraft Service International, Inc. prays that this Court grant the following relief:

A.     Issue a temporary restraining order and, after a hearing, a preliminary injunction to be made permanent on final judgment:

B.     Restrain and enjoin the Defendants, their officers, agents, employees, and members, and all persons acting in concert or participation with them, from in any manner or by any means directing, calling, causing, authorizing, inducing, instigating, conducting, continuing, encouraging, or engaging in any primary strike, sympathy strike, secondary strike, work stoppage, picketing, sick-out, slow-down, work-to-rule campaign, or other concerted action which is intended to disrupt or interfere with the normal operations of ASIG or any of ASIG's customers in violation of the RLA.

C.     Requiring the Defendants and individuals and entities affiliated with and acting in concert with them to issue such notices and to take such steps as shall be necessary and appropriate to carry into effect the substance and intent of the preceding paragraph, including but not limited to the requirement that the Defendants (i) publicly withdraw and rescind any orders, directions, requests, or suggestions to ASIG employees to do any of the acts specified in the preceding paragraph, and (ii) affirmatively direct and advise the ASIG ANC employees, by written notice, to refrain from doing any such acts and to post such notice on bulletin boards,

*STOEL RIVES LLP*
*510 L Street, Suite 500, Anchorage, AK 99501*
*Main (907) 277-1900 Fax (907) 277-1920*

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
*- 20*
4822-5706-9644.1
93737897.1 0160501-00001

Case 3:17-cv-00167-HRH   Document 1   Filed 08/09/17   Page 20 of 22

computer forums and websites, and at such other places that are reasonably likely to be viewed by ASIG ANC employees.

        D.      Grant ASIG such other and further relief as is just and proper, including costs and attorneys' fees.

Dated this 9th day of August, 2017

                         STOEL RIVES LLP

                         By: s/ Kevin M. Cuddy
                            KEVIN M. CUDDY

                         FOLEY & LARDNER LLP
                            CHRISTOPHER WARD
                            (*PRO HAC VICE* PENDING)

                         *Counsel for Aircraft Service International, Inc.*

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

*ASIG v. International Association of Machinists, Case No. _____*
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
*- 21*
4822-5706-9644.1
93737897.1 0100301-0000l

# VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on (date) ___8-9- 2017___.

Signature: _____

Print Name: ___Michael Farris_____

STOEL RIVES LLP
510 L Street, Suite 500, Anchorage, AK 99501
Main (907) 277-1900 Fax (907) 277-1920

*ASIG v. International Association of Machinists*, Case No. _____
*Complaint for Declaratory Judgment and for TRO and Injunctive Relief*
- 22 -
4822-5706-9644.1

Case 3:17-cv-00167-HRH   Document 1   Filed 08/09/17   Page 22 of 22